Good morning. May it please the Court. My name is Jon Ploss. I'm here on behalf of Petitioner Appellant Afrouz Keirkhavash, who is a respondent in Federal Immigration Removal Proceedings. We're here today because the immigration judge in the BIA denied a relief she saw, which was asylum, withholding of removal, adjustment of status, and protection under the United Nations Convention Against Torture, or CAT. We're asking this honorable court to reverse her demand based on two main premises. First, that the 2013 and 2014 BIA decisions- Counsel, would you mind speaking up a little bit? Yeah. Sorry. First, that the 2013 and 2014 BIA decisions denying the request for relief under CAT were not supported by substantial evidence, and second, that the 2013 BIA decision upholding the immigration judge's denial of her motion to amend her earlier proceedings was an abuse of discretion. Turning first to the CAT claim, in order to have been successful, she would need to demonstrate that it was more likely than not that she would suffer torture if removed to Iran. Torture in this context- The problem is that the immigration judge didn't believe your client, and a principal reason the immigration judge didn't believe your client is that she's a confessed liar. Now, how can one possibly say that the record lacks substantial evidence when your client is indeed a confessed liar? Well, Your Honor, there's a number of problems with his adverse credibility determination as it relates to the second round of proceedings. To begin with, one of his main tenets of supporting his adverse credibility determination was in fact, the confession that she did, in fact, lie during the first round of proceedings. She lied in the asylum application, she lied in her testimony, she lied to the board, and it's not as if it were a one-off error quickly corrected. It was persistent and deliberate. Your Honor, when it was remanded for the consideration of CAT, she took it upon herself to notify the court at that point in time when she still actually remained eligible for CAT. This court has actually held in 2013 in the case of Ji Chen Ni that an adverse credibility determination from prior proceedings does not necessarily carry over to a new claim for asylum and other relief, particularly if it's on a distinct set of- It doesn't necessarily be no legal error if the immigration judge had decided, well, she's telling the truth at long last, but that's not what the immigration judge decided. My question is, how can there be a deficiency of substantial evidence for an adverse credibility finding against a confessed liar? Well, again, this court has held that it does not necessarily carry over, and then the other main tenet- No, you're mixing up a bunch of things. To say X does not necessarily mean Y is to say the immigration judge can say that somebody has finally straightened around and telling the truth. It is not to say the immigration judge must do that. It's to repose discretion in the immigration judge. Our standard is substantial evidence, and one of the things in the record is the history of deceit by your client. The question is, what forbids the ALJ and the board from taking that into account? There's nothing that forbids that, Your Honor. Exactly. Why isn't that substantial evidence? Well, the other major tenet supporting his adverse credibility determination, because he didn't actually undertake a new review of her credibility in the current proceedings. He said, basically, she had made a claim with the ARDC based on the actions of her first attorney. She had pursued an ineffective assistance of counsel claim with the court. Yes, and her attorney said she's lying about me too. Yes. And then the immigration judge precluded any testimony or arguments in relation to the claim by the attorney that she was lying, based solely on the ARDC's decision not to pursue a claim against that first attorney, finding it was tantamount to what he said she said, and that they didn't think they could sustain the burden. So based solely on that reason, the immigration judge precluded any argument in relation to ineffective assistance of counsel. He essentially punts on that issue, but then uses that as a major tenet in finding her currently not credible. Advice from a lawyer can never justify perjury. If you get advice from a lawyer to lie and you're told by the judge that you must testify truthfully under oath, you must testify truthfully under oath, that's the crime of perjury even if your lawyer told you to tell a lie. One cannot say, well, it doesn't matter because the lawyer told me. No. This person could have gone to prison for five years for perjury, right? There's no way in which we can say the board must accept this excuse when it wouldn't be an excuse in a criminal perjury prosecution. I understand, and I'm not condoning that she confessed that her first testimony was misrepresentations. That doesn't mean that one cannot rehabilitate themselves. And despite the adverse credibility that you're talking past one another, because to say that something is possible is not to say that it is mandatory. And you can't win on this appeal without showing that it is mandatory that the immigration judge believe her the second time around. What I'm arguing is that his reasons for finding her adversely credible in the second round of proceedings were not persuasive. Irrespective of the adverse credibility finding, she still would be eligible for release under CAT. The governing regulations and Seventh Circuit case law requires that the BIA review all relevant evidence, including country reports, articles, and other documents submitted in spite of an adverse credibility finding. In fact, this court has held in Mansour v. INS that it was reversible error for the BIA not to consider country reports and other documentary evidence in the face of an adverse credibility finding. That's exactly what the BIA did here. Afrooz had submitted numerous articles, country reports, about the torture that she would suffer as a potential adulterer in Iran and also as a potential imputed member of the Mujahedin. If I understand the imputed problem, in essence, the idea is that you can lie about a basis for asylum and then argue that my lie will be heard in my home country. It may be believed and now I face a real risk of torture even though I was lying about my association with these people. To a certain extent, that was not her ultimate goal or the end game from the start here. That's the logic of your position, correct? Correct. In essence, it is actions by the United States government that have helped put her in this position as well in that tendering that certain copy of the redacted order to the Iranian interest section of the Pakistani embassy. It is redacted. The language that speaks to asylum and withholding has been redacted. The rest of the language is there, however, and it stands to reason that this government has actually deported or sought to deport Iranian nationals using the same method and tendering these same documents to the Pakistani embassy before. And a 10-second comparison of her order versus an order from someone else who had their relief denied on any other ground would allow that person to see that she had claimed asylum and withholding. The Eighth and Ninth Circus, the Ninth Circus in particular in Hosseini v. Gonzales, a case very similar to this, noted that nothing restrains Iran's actions here and it would not be unreasonable to believe that Iran would figure out that she had applied for them but has been denied for asylum, withholding, and removal. Is there a reason, Mr. Floss, why you have not pursued, tried to pursue this case on an anonymous basis? We actually, when the petition for review was filed, we sought leave to file it under seal with this court and that was denied. With this court? Yes. Any attempts before the BIA? Not with the BIA, Your Honor, no. We were not the attorneys for the original appeal in 2003 that had been remanded. But the Board of Immigration Appeals required you to provide additional facts that show that she would be stoned, or stoned to death if she went back? Your Honor, we submitted numerous, or prior counsel submitted numerous country reports, articles of the treatment of Iran of death by stoning, of imprisonment, and similar. But that wasn't enough for the immigration judge? They didn't address it at all. And that's reversible error under this court's case law in Mansour v. INS. If there are no other questions, I would reserve some time for rebuttal. Thank you, Your Honor. Mr. Floss? Mr. Pitt. Good morning, Your Honors, Aaron Petty on behalf of the Attorney General. Afrooz Kirkevash is a liar, a supporter of the Mejahedini caulk, or both. And any combination of those is enough to deny the petition. First I'd just like to make two corrections responding to what counsel just said. First, with respect to this court's decision in Jishong Ni, that concern carried over from a prior adverse credibility determination and subsequent asylum application. In this case, there has been only one adverse credibility finding, so Ni just doesn't apply. Second, with respect to the anonymity, the petitioner did seek leave to proceed under seal in the prior petition, 13-1889, and that was denied. She has never sought to proceed anonymously or under a pseudonym. And in this petition, the 14-2063, she's not sought any of that relief. I think Judge Easterbrook has articulated the credibility issue difficulty with this petition fairly well, so if I could turn to the Kat question first. The only evidence that she has that she's personally at risk of being stoned to death as an adulterer upon her return to Iran is the hearsay, within hearsay, testimony of her father, who said that her other sister told the father that the husband had reported her to a religious tribunal in Iran. Now that's the testimony of a man who admitted to perjury himself. Was there a general policy, though, with regard to stoning based on adultery? There is evidence in the record that it has happened. I don't believe that it's a general policy. What about a divorce in the U.S. and then being considered, anything after that being considered adultery, any relationship? There's no evidence addressing that in the record. There's the testimony of the father, and there's the country reports. And we know from this court's decision in Ishaq that country conditions are generally going to be insufficient to demonstrate eligibility for Kat protection. With respect to the disclosure of the application, the fact that she has applied for asylum does not compel the conclusion that she's going to be tortured as an MEK member. That's the same conclusion that the Eighth Circuit came to in Ghasememeh, and when you look at the document that's been redacted, the most that anyone could conclude was that she applied for asylum, and you'd have to have a similar document that's unredacted to compare it to. There is absolutely no way that anyone could conclude that she applied for asylum on the basis of a claimed affiliation with MEK just from that document. What she's really trying to do, as Judge Hamilton pointed out, is saying that seeking Kat protection is a basis for obtaining Kat protection, and that kind of bootstrapping can't be allowed. Going back to the asylum for a moment, there was a finding in 2003 that she was ineligible for asylum and withholding of removal based on the terrorism provisions, and Petitioner hasn't challenged that finding. This is the first opportunity that she's had to present a claim challenging that finding to the Court of Appeals, and she's essentially waived it. Again, there's the adverse credibility problem. In addition to having admitted to being a liar, there's still her mother's statement that supported her first. Well, the reason I was asking you, let me take you back before, there's no question about the divorce, is there? That's not a matter of lying or not lying. There is a judgment from an Illinois court granting a decree of divorce, but we don't actually know that the husband, her purported husband, actually exists. She says that she was married, but apart from her incredible testimony... She got a divorce decree without having a husband? She could have if she wanted to manufacture a claim that she would likely be tortured, but we don't have any evidence that the husband even exists. You didn't get a certified copy of the divorce decree? There wasn't one in the record? There's a copy of the divorce decree in the record. I don't know what sort of factual inquiry the state court made before granting that decree though. I believe it may have been served by publication. So there's the mother's statement. Well, I'm trying to get around the fact with regard to credibility in the sense that you then, if you have a country report that divorces in the United States, or at least divorces anywhere, aren't recognized, and any subsequent thing may result in stoning to death. Can you put those two together without any basis for credibility? The only... Well, it's the father's credibility really. She said that the only basis that she had to fear of being stoned to death was what her father told her, and her father found out purportedly, remember he was found incredible too, is what he said he was told by another sister that's still in Iran. So in order to get to torture in Iran, you have to have credible testimony from someone linking any sort of general policy to what's going to happen likely to her, and you don't get that with the adverse credibility finding against both her and her father. So in addition to the fact that she admitted to lying, we still have her mother's statement that supports the first version of events, that she actually was an MEK supporter, and there's the letter from the Fakhoura magazine that supported her claim that her husband worked for that magazine and was also an MEK supporter. Unless the panel has any further questions, we ask that the court deny the petition for review. Certainly. Anything further, Mr. Floss? Yes, sir. Your Honor, to address the claim about the seeking leave to file the petition for review under seal, nothing had changed in between the 2013 and 2014. Yes, I looked on the docket. There was no application for leave to file this petition under seal. Nothing was filed. Nothing was denied. In 2013? In this proceeding, 14-2063. That's correct, Your Honor. There was no application for leave to proceed anonymously. No facts of her case had changed in between the 2013 and 2014. That may be a reason why you didn't file such an application, but in response to Judge Hamilton's question, you said that you had and it was denied. None had been filed. I stand corrected, Your Honor. My apologies. Another point in relation to the evidence in the record. Torture here doesn't need to be death by stoning. It could take many forms. It can be imprisonment, interrogation, beatings, other forms of death, death threats as well. And addressing the point of the MEK inadmissibility issue, the immigration judge on remand did not address that issue at all. His decision, his lengthy decision, did not address that. It denied it on other grounds. He could immediately foreclose the additional motion to amend applications by saying, oh, she's inadmissible still. The BIA in its decision, in both of its decisions, did not reference the fact that she was inadmissible under that at any point in either of those decisions as well. If there's no other questions, Your Honor, we'd ask that the petitions be reversed and remanded. Thank you very much. The case is taken under advisement and the court will be in recess. Thank you.